UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| LINUS MAYES et al | CIVIL ACTION NO: 12-2992 |
| VERSUS | JUDGE DONALD E. WALTER |
| FEDEX FREIGHT, INC. et al | MAGISTRATE JUDGE HAYES |

---

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. #34], filed by Defendant, FedEx Freight, Inc. ("FXF").[1] Plaintiffs, Linus and Angie Mayes, oppose the motion [Doc. #38]. For the reasons that follow, the motion is **DENIED**.

## FACTS

This case arises out of an incident that allegedly took place on or about December 21, 2011 on Interstate 20, in Caddo Parish, Louisiana. On that date, Plaintiffs allege that they were driving their 2008 Chrysler 300 approximately two car lengths behind a truck owned by Defendant FXF, when a padlock flew off of the FXF truck and struck the Plaintiffs' windshield.[2] At the time of the alleged incident, Mr. Mayes was driving Plaintiffs' vehicle, and Ms. Mayes was riding in the passenger seat. Ms. Mayes testified that she saw the lock hanging off of the FXF truck prior to the truck hitting a bump, which then caused the lock to fly off the truck and

---

[1] Plaintiffs have also sued John Doe, an "unknown person who was the operator of the FedEx vehicle at issue in this litigation at all times material to this litigation" and ABC Insurance, an "unknown insurance company, who is alleged to have provided liability insurance covering Defendants, John Doe and FedEx Freight, at all times material to this litigation." [Doc. #1-1, p. 3, ¶¶ I.2.b and I.2.c.]. John Doe has never been identified, as far as the Court is aware; however, Plaintiffs have alleged that FXF is vicariously liable for all actions of John Doe which took place within the course and scope of his employment with FXF. [*Id.* at p. 7, ¶ XVII].

[2] Doc. #34-3, p. 14, lines 13-23; p. 17, line 3; Doc. #34-4, p. 62, line 11.

strike the Plaintiffs' windshield on the passenger side.[3] Ms. Mayes described the lock as a "silver-grayish lock" and testified that she never saw the lock again after the day of the accident.[4] Mr. Mayes testified that he did not notice the lock before the incident and merely saw a metallic object come off the truck and strike the windshield.[5]

As a result of the impact between the padlock and Plaintiffs' windshield, Mr. Mayes applied the brakes, allegedly causing Ms. Mayes to be thrown forward, hit the dash, and then fall back, causing the passenger seat to break. As Ms. Mayes describes it, "[t]he whole seat broke, so [she] went to the back[,]" because the seat "came apart."[6] Although Ms. Mayes claims to have been wearing a seatbelt which failed to prevent her from being thrown forward, Ms. Mayes testified that she could not recall whether the seatbelt was broken.[7] Ms. Mayes testified that the incident "kind of threw [her] all around in the car."[8] A few days after the alleged incident, Ms. Mayes went to see a Dr. Guice, who she describes as being a "physical therapy doctor," but she did not go to a hospital or emergency room as a result of this incident.[9] Eventually, Ms. Mayes

---

[3] *Id.* at p. 14, lines 20-23.

[4] *Id.* at p. 30, line 24; and p. 29, lines 16-17. (As noted below, Mr. Mayes returned to the scene after the date of the accident and allegedly recovered what Plaintiffs believe to be the lock that struck their windshield; however, Mr. Mayes did not present the lock to Ms. Mayes prior to turning it over to an attorney. The current whereabouts of the lock are unknown, and FedEx has filed a motion for spoliation of evidence regarding the lock. [*See* Doc. #39].).

[5] Doc. #34-4, p. 12, lines 9-24.

[6] Doc. #34-3, p. 18, lines 11 and 14.

[7] *Id.* at p. 16, line 14.

[8] *Id.* at p. 15, lines 1-2.

[9] *Id.* at p. 28, lines 2, 6, and 18-20.

2

also saw Doctors Kamm and Ramos, also as a result of this incident.[10]

Mr. Mayes testified that, when the lock struck the windshield, he veered off the road, checked to make sure his wife was okay, and then immediately proceeded to follow the FXF truck in an attempt to catch up to the truck.[11] Mr. Mayes testified that he did catch up to the truck, but he was not able to see the driver or get his attention.[12] Mr. Mayes was, however, able to read and verbalize identifying numbers from the FXF truck to Ms. Mayes, who then wrote the numbers down on a piece of paper while Mr. Mayes drove.[13] The next day, Mr. Mayes claims that both he and his wife woke up feeling stiff and in pain, at which point Mr. Mayes called FXF to report the incident and then went to the police station to make a report.[14] Sometime thereafter, Mr. Mayes returned to the scene of the accident, where he claims to have found a broken lock on the side of the interstate, "in the general area" of the accident.[15] Mr. Mayes cannot say with any certainty that the lock he found is the lock that allegedly struck Plaintiff's windshield on

---

[10] *Id.* at p. 29, lines 4 and 14-15. (Although both Mr. and Ms. Mayes testified during their depositions regarding their general areas and levels of pain, the Court has not been presented with evidence of Plaintiffs' actual damages for purposes of summary judgment).

[11] Doc. #34-4, p. 13, lines 2-6.

[12] *Id.* at p. 14, lines 10-19.

[13] *Id.* at p. 16, lines 11-14.

[14] *Id.* at pp. 20-21.

[15] *Id.* at pp. 31-33, 35; and p. 41, lines 14-15. *See also* Doc. #34-4, p. 35, lines 17-21; and p. 38, lines 8-10 (During his deposition, Mr. Mayes repeatedly stated that he returned to the scene "a few days after" the incident; however, he could not recall whether it might have been as late as February 3, 2012. He further testified that he returned to the scene with a flashlight at 3:00 a.m., in an attempt to avoid heavy traffic while "looking for a lock," because his wife had told him that the metal object that struck the windshield was a lock).

3

December 21, 2011.[16] Mr. Mayes testified that he then gave the lock to an attorney, apparently without first showing it to Ms. Mayes, and has no knowledge of the current whereabouts of the padlock.[17]

In December of 2011, all of the FXF tractor-trailer units, including the FXF truck involved in this litigation, were equipped with black Master locks issued by FXF.[18] FXF's records show that the long shank, black Master lock, issued by FXF and installed on the subject trailer, was in place at the time of the alleged incident.[19] The locks used by FXF are internally mounted inside a bracket that is bolted and welded to a door of the trailer; the driver cannot physically replace or remove a lock from an FXF trailer.[20] Chris Chandler, the FXF Service Center manager, confirmed that the lock, which appears in the photographs taken by Mr. Mayes, is not the type of lock used by FXF.[21] An investigation by FXF determined that the lock in Plaintiffs' photographs was never used by FXF, and no FXF driver ever reported anything falling off of a tractor-trailer on the day of the alleged incident or during the relevant time period.[22] Anytime a lock is installed, removed or repaired, FXF's fleet maintenance department

---

[16] *Id.* at p. 41, lines 23-25 and p. 42, lines 1-2.

[17] *Id.* at p. 50, lines 17-22. *See also* Doc. #34-6, p. 1.

[18] Doc. #34-2, p. 1, ¶1.

[19] *Id.* at p. 2, ¶7.

[20] *Id.* at ¶4.

[21] *Id.* at p. 1, ¶2.

[22] *Id.* at p. 2, ¶3.

must perform the work, after which records would exist of said work.[23] FXF's fleet maintenance records show that no lock was changed out, moved, or replaced within a six (6) month period preceding or following the Mayes' alleged incident.[24]

    Plaintiffs allege that FXF, directly and vicariously through its driver-employee John Doe, was negligent in failing to properly inspect FXF vehicles; failing to properly secure padlocks to the doors of FXF vehicles; failing to properly instruct and/or train its employees as to the proper inspection and securing of doors and padlocks; failing to properly supervise and monitor the conduct of its employee; hiring John Doe; and failing to enact and promulgate proper rules, regulations, and safety procedures to prevent the relevant risk of harm. Plaintiffs further allege custodial liability, claiming that FXF had custody of the truck, on which an unsecured padlock presented an unreasonable risk of harm, of which FXF knew or should have known, such that FXF could have prevented said risk of harm but failed to take any reasonable precautions, thereby causing damage to the Plaintiffs.

    In the instant motion, FXF seeks summary judgment on the basis that there remain no genuine issues of material fact as to the following: (1) the accident did not occur as alleged by Plaintiffs; and (2) Plaintiffs' broken and/or defective passenger seat was not caused by FXF. Plaintiffs respond, first, by arguing that there are no known witnesses to the incident, such that the Court must rely solely on the Mayes' testimony. Plaintiffs further respond by stating that there is no evidence to suggest that the passenger seat was defective; rather, the lock striking the windshield set off a chain of events which ultimately caused the seat to break and the Plaintiffs

---

[23] *Id.* at ¶5.

[24] *Id.* at ¶6.

to sustain injuries.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311. Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574

---

[25] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

(1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

Louisiana Civil Code article 2315 provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." To determine whether a plaintiff should recover on a negligence claim, Louisiana courts conduct a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, No. 2004-C-0485 (La. 6/29/05); 916 So.2d 87, 101 (citation omitted). Under the duty-risk analysis, plaintiffs must establish five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a

7

cause-in-fact of the plaintiffs' injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiffs' injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). *Id.* Likewise, the standard for custodial liability is set out in Louisiana Civil Code article 2317.1, which provides in relevant part: The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. Civ. Code art. 2317.1.

Thus, under either article 2315 or article 2317.1, the plaintiffs "must prove that the [thing] was within the defendant's custody, that it contained a defect that presented an unreasonable risk of harm to others, and that the defendant knew or should have known of the defect." *Poindexter v. U.S.*, No. 06–30529, 244 Fed. Appx. 561, 564 (5th Cir. 2007) (citing *Brown v. Williams,* 36,863 (La. App. 2 Cir. 7/31/03); 850 So.2d 1116, 1120); *see also Teel v. State, Dept. of Transp. and Development*, No. 96-CA-0592 (La. 10/15/96); 681 So.2d 340, 343. The court must determine which risks are unreasonable in accordance with the facts and circumstances of each case. *Pitre v. Louisiana Tech University*, Nos. 95–C–1466, 95–C–1487 (La. 5/10/96); 673 So.2d 585, 590 (citation omitted).

There is no doubt that FXF, and all motorists, have a duty to ensure that its vehicles are maintained in good condition, by exercising reasonable care in performing inspections thereof, and to ensure that its vehicles are operated in a reasonable and safe manner. Here, the remaining issues are whether FXF breached that duty and whether and to what extent FXF may be liable for

any damages suffered by the Plaintiffs. Plaintiffs allege that FXF breached its duty by, *inter alia*, failing to properly secure a padlock to the back door of one of its tractor-trailers. As stated, FXF seeks summary judgment on the basis that there remain no genuine issues of material fact as to the following: (1) the accident did not occur as alleged by Plaintiffs; and (2) Plaintiffs' broken and/or defective passenger seat was not caused by FXF.

In ruling on a motion for summary judgment, "[a] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-48) (emphasis in original). That said, the Court is cognizant of two rules of law at this stage in the litigation: evidence is to be viewed in the light most favorable to the non-movant, and the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of evidence," and drawing conclusions from facts "are jury functions." *Anderson*, 477 U.S. at 255.

In light of the foregoing principles, at this stage in the litigation, and despite the fact that there is ample undisputed evidence to controvert the Plaintiffs' position, the Court cannot discredit the deposition testimony of Mr. and Ms. Mayes. That testimony serves to create a

genuine dispute as to the material facts of whether or not any padlock struck the windshield of the Mayes' vehicle on December 21, 2011 and/or whether any such padlock originated from the back of a truck owned and operated by FXF. If evidence must be weighed, then it must be weighed at trial, and summary judgment must be denied. Because the Court finds that it cannot resolve this dispute at the summary judgment stage, this discussion need go no further.

## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [Doc. #34], filed by Defendant, FedEx Freight, Inc. ("FXF") is hereby **DENIED**.

**THUS DONE AND SIGNED** this 20th day of August, 2015, in Shreveport, Louisiana.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE